UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**TIFFANI STEPHENSON**,   Case Number 3:13 CV 1198

Plaintiff,   Judge Jeffrey J. Helmick

v.   REPORT AND RECOMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

Defendant.   Magistrate Judge James R. Knepp, II

### INTRODUCTION

Plaintiff Tiffani Stephenson seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated May 30, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL HISTORY

On August 24, 2009, Plaintiff filed applications for DIB and SSI benefits claiming lymphedema in her left leg limited her ability to work. (Tr. 14, 152, 159, 207). Her claims were denied initially and on reconsideration. (Tr. 59, 62, 67, 70). Plaintiff requested a hearing before an administrative law judge (ALJ), which was held November 9, 2011. (Tr. 26). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (Tr. 11, 26). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. On April 2, 2013, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

*Plaintiff's Vocational and Personal Background*

Born December 22, 1978, Plaintiff was 30 years old at the time of her alleged disability onset date of June 13, 2009. (Tr. 16, 19). She has a high school education and prior relevant work experience as an assembler, straightening press operator, bartender, pizza baker, and waitress. (Tr. 19).

Plaintiff was enrolled in online accounting classes but stopped when her father's internet connection was cancelled. (Tr. 32, 39-40). While taking classes, Plaintiff sat for three hours per day with her foot elevated at the desk. (Tr. 40). There is limited evidence of Plaintiff's daily activities, only that she did laundry and dishes. (Tr. 40). Plaintiff raised her foot on a stool while standing at the sink and also had some help from her thirteen-year-old daughter. (Tr. 40). Plaintiff attended approximately four of her daughter's volleyball games during one season. (Tr. 40-41).

Plaintiff claimed severe swelling in her left leg prevented her from standing for more than one or two hours and required frequent elevation and 24-hour compression therapy. (Tr. 35-36, 207). She averred swelling reduced her ability to sleep at night causing extreme fatigue during the day. (Tr. 207). Plaintiff told her attorney she did not have any other "problems" besides her left leg swelling (Tr. 34), but when questioned by the ALJ, claimed she suffered from extreme medication side-effects including headaches and shaking (Tr. 39).

*Medical Evidence*

Plaintiff visited James Byatt, M.D., on August 7, 2008, the day after she went to the emergency room for chest pain. (Tr. 244, 258). Dr. Byatt recounted that at the hospital, all chest examinations were normal and Plaintiff was discharged and advised to avoid fatty food. (Tr.

258). Plaintiff complained of sudden onset and persistent pain, nausea, and vomiting. (Tr. 244). Previously, given her past history of melanoma and lack of treatment since surgery, Dr. Byatt referred Plaintiff to a dermatologist and noted examinations there came back "fairly normal". (Tr. 244). Physical examination revealed chest and abdominal pain with Murphy's sign suggestive of acute cholecytitis. (Tr. 244). Dr. Byatt referred Plaintiff to a surgery consultation and initiated a medication regimen. (Tr. 245).

Also on August 7, 2008, Michael Bielefeld, M.D., examined Plaintiff, assessed cholelithiasis and possible cholecystitis, and recommended a laparoscopic cholecystectomy, which Plaintiff underwent that day. (Tr. 246, 249). The procedure revealed numerous small gallstones. (Tr. 250).

More than seven months later, from March 20 to 21, 2009, Plaintiff was treated at the emergency room for a cat bite and subsequent allergic reaction. (Tr. 232, 238). She was described as a "relatively healthy 30 year old" who smoked approximately one pack per day for the past fifteen years. (Tr. 232).

On June 17, 2009, a left venous scan of Plaintiff's lower extremity revealed no evidence of proximal deep vein thrombosis of the left lower extremity. (Tr. 228). Dr. Byatt indicated Plaintiff's pain presented a significant problem and would send her to vascular surgery to see what else could be done as he was unfamiliar with the specialized equipment possibly needed to treat Plaintiff. (Tr. 286).

Andrew J. Selwert, M.D., evaluated Plaintiff at Dr. Byatt's request on July 6, 2009. (Tr. 278). Plaintiff recounted a history of melanoma and left inguinal lymphadenectomy. (Tr. 278). She said her left leg swelling was worse at the day's end and exacerbated by warm weather and recent weight gain. (Tr. 278). An Ace wrap improved Plaintiff's symptoms but she did not use it

on a regular basis. (Tr. 278). Plaintiff averred there was some clear drainage from the center of her posterior calf scar when her legs were markedly swollen. (Tr. 278). Having been laid off, she told Dr. Sewert she gained new employment and would soon return to the work force with prolonged standing. (Tr. 278). Dr. Sewert referred Plaintiff for treatment at the Lymphedema Clinic and asked to see her in six-to-eight weeks, when treatment would be completed. (Tr. 279).

Todd E. Russell, M.D., updated Dr. Byatt on October 19, 2009, indicating the Lymphedema Clinic had "done a nice job" of getting Plaintiff's swelling under "good control" and noting Plaintiff's calf was half the size it was prior to treatment. (Tr. 277). However, Dr. Russell indicated Plaintiff continued to have significant pain in her lower left extremity. (Tr. 277). It seemed unusual to Dr. Russell for Plaintiff to have so much lymphedema pain when for most people, the swelling was relatively painless. (Tr. 277). Dr. Russell encouraged Plaintiff to continue compression therapy and recommended further testing to determine the source of Plaintiff's pain. (Tr. 277).

On November 23, 2009, Plaintiff underwent a venous duplex bilateral examination which revealed no evidence of deep vein thrombosis, superficial venous thrombosis, or venous valvular insufficiency in either leg. (Tr. 226).

After completing a round of treatment at the Lymphedema Clinic, Dr. Selwert, M.D., wrote to Dr. Byatt on December 7, 2009, indicating Plaintiff had a "somewhat favorable response" to treatment, including use of compression stockings. (Tr. 276). However, Plaintiff said her level of function remained less than optimal because she was unable to squat down on the floor to play with her children. (Tr. 276). Clinically, Plaintiff's legs showed no sign of venous hypertension and a Lympha Press vastly improved her symptoms. (Tr. 276). On examination, Plaintiff's lower left extremity was considerably more swollen than her right but

there was no sign of ulceration near the calf and the thigh had nearly normal tissue turgor. (Tr. 276). Further, there were no prominent varices over the groin on the left side. (Tr. 276). Dr. Selwert encouraged Plaintiff to be as active as possible and to use chaps to keep her stockings from slipping down her leg. (Tr. 276). Dr. Selwert said the probability of May-Thurner syndrome was low and asked to see Plaintiff again in six months. (Tr. 276).

On January 7, 2010, Dr. Byatt prescribed Sinernet to reduce symptoms of restless leg syndrome and Darvocet-N to address Plaintiff's upset stomach caused by taking "huge quantities of over-the-counter ibuprofen". (Tr. 324). Plaintiff complained of bilateral neuropathic symptoms and denied back pain even though she exhibited lower spine tenderness and had positive straight leg raise tests. (Tr. 324). Dr. Byatt noted Plaintiff's weight had been "steadily sneaking up", which Plaintiff attributed to the consumption of a high volume of regular soda and being laid off from her job. (Tr. 324).

On January 13, 2010, an MRI of Plaintiff's lumbar spine was unremarkable. (Tr. 329-30). About three weeks later, Dr. Byatt indicated Plaintiff was sleeping better and referred her to physical therapy to address increased knee pain. (Tr. 323).

Dr. Byatt examined Plaintiff on April 22, 2010, for the Ohio Department of Job and Family Services where he indicated Plaintiff suffered from persistent severe lymphedema of the left leg. (Tr. 321). At the time, Dr. Byatt said Plaintiff's treatment schedule at the Lymphedema Clinic prevented her from being able to hold a job. (Tr. 321). Dr. Byatt opined Plaintiff could not stand, walk, or sit during an eight hour workday. (Tr. 322). She was unable to lift or carry more than five pounds frequently and eight-to-ten pounds occasionally and was markedly limited in abilities to push, pull, bend, reach, and perform repetitive foot movements. (Tr. 322). Dr. Byatt considered Plaintiff unemployable. (Tr. 322).

5

On June 16, 2010, an interventional venography of Plaintiff's left extremity was unremarkable, ruling out May-Thurner syndrome and revealing only trace deep femoral reflux on the left side. (Tr. 304).

On September 10, 2010, Plaintiff was depressed after her significant other left her. (Tr. 320). Dr. Byatt prescribed Zanax and asked to see Plaintiff again in two weeks. (Tr. 320).

Plaintiff followed up with Dr. Byatt on September 24, 2010, and indicated her biggest problem was that she had broken up with her boyfriend of twenty years. (Tr. 319). Plaintiff took Darvocet semi-regularly for lymphedema pain and hoped to reenter the workforce. (Tr. 319).

On March 3, 2011, Dr. Byatt adjusted Plaintiff's medication but indicated Lyrica "really helped" the neuropathy in Plaintiff's leg. (Tr. 318). Tylenol 3 was also effective but upset her stomach, so Tramadol was prescribed instead. (Tr. 318). Dr. Byatt indicated Plaintiff was taking "15 classes this semester" in an effort to obtain a bachelor's degree in accounting and looked "wonderful". (Tr. 318).

Dr. Byatt completed a medical source questionnaire on April 4, 2011, where he indicated Plaintiff's symptoms included chronic painful swelling of the left leg with burning paresthesia and hyperesthesia. (Tr. 315). He opined Plaintiff could sit, stand, or walk for up to half-an-hour in an eight-hour workday. (Tr. 315). Plaintiff could lift up to fifteen pounds occasionally and would need unscheduled breaks every half-hour. (Tr. 333). She could be expected to miss up to five days of work per month. (Tr. 333). Treatment notes from the same day indicated Plaintiff presented with disability paperwork but was trying to advance herself by going to school online. (Tr. 317). However, Dr. Byatt said she could not work because she had to frequently change position. (Tr. 317).

6

*Disability Related Development*

State agency medical consultant Leigh Thomas, M.D., reviewed Plaintiff's records and completed a physical residual functioning capacity (RFC) assessment on November 25, 2009, where she opined Plaintiff could perform a full range of light work except she could lift or carry up to twenty pounds occasionally and ten pound frequently, stand or walk for at least two hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push or pull without limitation. (Tr. 295-96). On April 22, 2010, Edmond Gardner, M.D., affirmed Dr. Thomas's RFC determination. (Tr. 225).

*ALJ Decision*

On November 23, 2011, the ALJ determined Plaintiff had the severe impairment of left leg lymphedema. (Tr. 11, 16). The ALJ found this impairment did not meet or medically equal a listed impairment. (Tr. 16-17).

Plaintiff had the RFC to stand and walk at the sedentary exertional level and lift and carry at the light exertional level, except that her lifting and carrying was limited to no more than fifteen pounds occasionally and she would not be required to stand or walk for more than a few minutes at a time. (Tr. 17). Further, Plaintiff required a sit/stand option; was restricted to no more than occasional stooping; and was precluded from climbing, kneeling, crouching, or crawling. (Tr. 17). Plaintiff could not use her left lower extremity for pushing, pulling, or operating foot controls and should avoid exposure to extreme heat. (Tr. 17). Based on VE testimony, the ALJ concluded Plaintiff could perform work as an information clerk, call-out operator, and telephone solicitor, and was therefore, not disabled. (Tr. 20).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the

Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence, or indeed a preponderance of the evidence, supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five–step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?

2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can she perform past relevant work?

5. Can the claimant do any other work considering her RFC, age, education, and work experience?

Under this five–step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only found disabled if she satisfies each element of the analysis, including inability to do other work, and meets the durational requirements. 20 C.F.R. §§ 404.1520(b)–(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

First Plaintiff argues, "the ALJ erred when he failed to fully and fairly evaluate the limitations resulting from [Plaintiff's] severe left leg lymphedema". (Doc. 13, at 10). Both the Commissioner and the undersigned construe this argument as challenging the ALJ's credibility and RFC determinations. (Doc. 14, 9-13). Next, Plaintiff claims the ALJ failed to provide good reasons for the weight afforded to Dr. Byatt's opinion and erred at step five. (Doc. 13, at 10-15). Each argument is addressed in turn.

*Credibility*

The Sixth Circuit recognizes that pain alone may be disabling. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). However, an ALJ is not required to accept a claimant's own testimony regarding his pain. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529; *see also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186. For pain or other subjective complaints to be considered disabling, there must be: 1) objective medical evidence of

9

an underlying medical condition; and 2) objective medical evidence that confirms the severity of the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). This standard does not require "objective evidence of the pain itself." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

A plaintiff's failure to meet the above-stated standard does not necessarily end the inquiry. Rather, "in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability." *Swain v. Comm. of Soc. Sec.*, 297 F. Supp. 2d 986, 989 (N.D. Ohio 2003) (citing SSR 96-7p).

The ALJ is to consider certain factors in determining whether a claimant has disabling pain: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication to relieve pain; and 6) any measures used to relieve pain. 20 C.F.R. 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. An ALJ is not required, however, to discuss each factor in every case. *See Bowman v. Chater*, 1997 WL 764419, at *4 (6th Cir. 1997); *Caley v. Astrue*, 2012 WL 1970250, at *13 (N.D. Ohio 2012).

Further, an "ALJ is not required to accept a claimant's subjective complaints" and may "consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d at 476. An ALJ's credibility determinations about the claimant are to be accorded "great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' However, they must also be supported by substantial evidence." *Cruse v. Comm'r of*

*Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Walters*, 127 F.3d at 531); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("we accord great deference to [the ALJ's] credibility determination.").

Here, to formulate the RFC determination, the ALJ acknowledged the requirement that he consider pain under SSR 96-7p and 20 C.F.R. § 404.1529. (Tr. 17). Although the ALJ determined Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, he found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were not credible to the extent they were inconsistent with the RFC assessment. (Tr. 18). Specifically, the ALJ found Plaintiff's contradictory statements regarding medication side effects, activities of daily living, and the medical evidence of record did not support her allegations of pain. (Tr. 18). Having reviewed of the record, the undersigned finds the ALJ's pain and credibility determination supported by substantial evidence.

With regard to contradictory statements, Plaintiff initially reported on multiple disability reports that she did not experience side effects from medication. (Tr. 171-77, 182-85). At the ALJ hearing, Plaintiff told her attorney she did not have any other "problems" besides her left leg swelling (Tr. 34), but when questioned by the ALJ, claimed she suffered from extreme medication side-effects including headaches and shaking (Tr. 39). In her Brief on the Merits, Plaintiff claims headaches do not contribute to her inability to work. (Doc. 13, at 11). On March 3, 2011, Plaintiff said Lyrica "really helped" and only complained of an upset stomach from Tylenol 3. (Tr. 318).

Concerning Plaintiff's daily activities, the ALJ noted Plaintiff did laundry, washed dishes, periodically attended her children's sporting events, and completed college coursework that required her to sit for three hours per day. (Tr. 18 *referring to* Tr. 40-41). The ALJ pointed

11

out Plaintiff ended the college coursework due to lack of internet connection rather than due to her impairments. (Tr. 18 *referring to* Tr. 32, 39-40). Plaintiff claims these activities "do not detract from [Plaintiff's] credibility[]" because she was able to keep her foot elevated at her desk and at the sink and only went to about four of her daughter's volleyball games. (Doc. 13, at 11). However, upon review, the ALJ accurately portrayed Plaintiff's testimony regarding activities of daily living and found them inconsistent with her claims of totally disabling pain. Further, there is no apparent reason Plaintiff could not elevate her leg in the way she did at the hearing and while taking online classes if necessary. (Tr. 36-37).

The ALJ also considered the lack of objective evidence of record, particularly the lack of evidence to support allegations of headaches and the need to elevate her leg throughout the day. (Tr. 18). Notably, Plaintiff contests the ALJ's finding with a reference to WebMD rather than directing the Court to objective evidence of record establishing such limitations. (Tr. 13, at 11). A citation to WebMD alone cannot overcome the high level of deference afforded to an ALJ's credibility determination. As discussed below, the ALJ accurately found limited objective evidence of record to support Plaintiff's claims. Further, the RFC afforded Plaintiff a sit/stand option and limited her to positions without the requirement to walk or stand more than a few minutes at a time.

In sum, the ALJ accurately considered the evidence of record and made a determination that Plaintiff's contradictory statements of record and at the hearing, activities of daily living, and medical history diminished her credibility regarding allegations of disabling pain. 20 C.F.R. 404.1529(c)(3). Therefore, the ALJ's credibility determination should be affirmed.

*RFC*

Additionally, Plaintiff challenges the ALJ's RFC determination. (Doc. 13, at 10-12). A

claimant's RFC is an assessment of "the most [s]he can still do despite h[er] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. An ALJ must also consider and weigh medical opinions. § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. The Court may not "try the case de novo, nor resolve conflicts in evidence". *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, the ALJ considered the entire record and limited Plaintiff to standing and walking no more than two hours in an eight-hour day; lifting and carrying no more that fifteen pounds occasionally and ten pounds frequently; no standing or walking for more than a few minutes at a time; a sit/stand option; no utilizing her left lower extremity for pushing, pulling, or operation of foot controls; no climbing, kneeling, crouching, and crawling but occasional stooping; and no concentrated exposure to extreme heat. (Tr. 17). In short, the ALJ's RFC determination is supported by substantial evidence.

To this end, there are minimal objective findings to support Plaintiff's claims of disabling pain. A June 2009 left venous scan of Plaintiff's lower extremity revealed no evidence of proximal deep vein thrombosis. (Tr. 228). A November 2009 venous duplex bilateral examination was unremarkable. (Tr. 226). Treatment through the Lymphedema Clinic was favorable, resulting in swelling reduced by half in October 2009 and vastly improved symptoms in December 2009. (Tr. 276-77). Compression stockings reduced leg swelling. (Tr. 35, 276-77, 305). A June 2010 interventional venography of Plaintiff's left extremity was unremarkable and ruled out May-Thurner syndrome. (Tr. 304). Moreover, a January 2010 MRI of Plaintiff's spine

13

was unremarkable. (Tr. 329-30).

Substantial evidence also supports finding Plaintiff's medication reduced her symptoms. To this end, on March 3, 2011, Plaintiff told Dr. Byatt Lyrica "really helped" the neuropathy in her leg. (Tr. 318). She also testified that medication reduced pain, dependant on her level of activity that day. (Tr. 35-36). As previously discussed, there is no evidence to support Plaintiff's claims of disabling side effects.

Moreover, the ALJ supported his adverse credibility determination with substantial evidence, including Plaintiff's activities of daily living, contradictory testimony, and lack of objective medical findings.

In sum, the undersigned concludes the ALJ satisfied his regulatory duties by considering medical opinions, Plaintiff's activities of daily living, objective evidence of record, and Plaintiff's credibility to make his RFC determination. Accordingly, the Court should find the ALJ's RFC is supported by substantial evidence.

*Treating Physician Rule*

Next, Plaintiff claims the ALJ erred by affording less than full weight to Dr. Byatt's opinions that Plaintiff could stand or walk for only one-half-hour in an eight-hour workday, would need unscheduled breaks every half-hour, and would miss five days of work monthly. (Doc. 13, at 12-14). This argument raises the well-known treating physician rule.

Generally, the medical opinions of treating physicians are afforded greater deference than those of non–treating physicians. *Rogers*, 486 F.3d at 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical

14

findings alone,' their opinions are generally accorded more weight than those of non–treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is [consistent] with other substantial evidence in the case record." *Id*. When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*.

Of importance, the ALJ must give "good reasons" for the assigned weight. *Id*. "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). "Good reasons" are required even when the conclusion of the ALJ may be justified based on the record as a whole. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). A failure to follow this procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. (quoting *Rogers*, 486 F.3d at 243).

Here, the ALJ provided good reasons for affording Dr. Byatt's extreme opinions limited weight. First, concerning Dr. Byatt's opinion that Plaintiff could only stand or walk for a total of one-half hour in an eight-hour workday, the ALJ pointed out this limitation is inconsistent with Plaintiff's own testimony that she could stand or walk for up to an hour. (Tr. 19 *referring to* 36).

15

Regarding Dr. Byatt's opinion that Plaintiff would miss five days of work monthly, the ALJ noted this statement was inconsistent with the evidence of record demonstrating the effectiveness of compression wraps in controlling Plaintiff's symptoms and her ability to maintain a heavy online college course load requiring her to sit for three hours per day. As mentioned, the ALJ commented Plaintiff did not end classes due to her disability, but rather because she no longer had internet access. The ALJ also rejected Dr. Byatt's extreme limitations as being inconsistent with his own treatment notes and the record as a whole. (Tr. 19). Notably, the ALJ afforded significant weight to Dr. Byatt's remaining opinions.

By commenting on the consistency and supportability of Dr. Byatt's extreme limitations, and supporting his subsequent RFC determination with substantial evidence, the ALJ did not violate the treating physician rule.

*Step Five*

Next, Plaintiff argues the ALJ erred when he relied on VE testimony to find Plaintiff's past relevant work as a bartender resulted in acquired interpersonal, verbal, and listening skills. (Doc. 13, at 14). Plaintiff further argues that when the skilled jobs are removed from consideration, one remaining unskilled job identified by the VE, a call-out operator, does not exist in significant numbers. (Doc. 13, at 14). In response, the Commissioner argues the unskilled position of call-out operator does exist in significant numbers, and in the alternative, contends Plaintiff has not supported her argument with applicable law. (Doc. 14, at 16-17).

To meet her burden at step five, the Commissioner must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence

16

may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id*. If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do"). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

At the hearing, the ALJ found Plaintiff suffered from limitations beyond those accounted for by the grids, and therefore relied on VE testimony and the grids to determine whether Plaintiff could find work in the national economy. (Tr. 19-20). The VE opined Plaintiff's past work included production assembler (classified as unskilled), press operator (skilled), bartender (semi-skilled), pizza baker (skilled), and waitress (semi-skilled). (Tr. 43-44). Next, the following exchange between Plaintiff's counsel and the VE took place:

> Q: Okay. And when you identified semi-skilled jobs, what skills – did she have transferable skills to those semi-skilled jobs?
>
> A: Looking at the bartender, very soft transferable skills would be interpersonal skills, verbal skills, listening skills. There's no, really, use of really detailed, computerized skills that's required for that. The jobs that cited could be used – or could be performed based on the past work.
>
> Q: So you're saying that listening and verbal skills are the skills that she acquired that transferred to the jobs you identified?
>
> A: Correct.
>
> Q: Are those more considered aptitudes rather than skills?

17

> A: Skills are something that you acquire. You have to have particular, for instance, listening, you have to be able to understand exactly what they are saying, and be able to interpret it. They might be aptitudes, but they are still skills in my opinion, soft skills.

(Tr. 47-48). Based on this testimony, the ALJ determined Plaintiff's past relevant work as a bartender was semi-skilled and required interpersonal, verbal, and listening skills. (Tr. 19).

Relying on Social Security Ruling (SSR) 82-41, 1982 WL 31389, Plaintiff argues this finding was erroneous "because [the VE] had not identified acquired work skills". (Doc. 13, at 14). However, the VE clearly enumerated these skills during his testimony.

To the extent Plaintiff claims the ALJ violated 82-41, that argument is misplaced. The Sixth Circuit has previously said SSR 82-41 applies only to the grids. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004). Here, the ALJ relied not only on the grids but also on VE testimony. Therefore, it would seem based on the Sixth Circuit's guidance that SSR 82-41 does not apply to this case. However, the above-stated finding was made in dicta so the analysis continues, albeit to the same result.

To this end, the Sixth Circuit determined an ALJ is not required to enumerate a skill set at step five. *Wilson*, 378 F.3d at 549 (finding neither 20 C.F.R. § 404.1568 or SSR 82-41 mandate the enumeration of transferable skills at step five). Rather, as he did here, the ALJ can support his step five determination with VE testimony that jobs are available in the regional economy which Plaintiff could perform. *Wilson*, 378 F.3d at 549 ("This court has held repeatedly that the testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work.") (citing *Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir. 2003); *Cline,* 96 F.3d at 150; *Sias v. Sec'y of Health &*

18

*Human Servs.,* 861 F.2d 475, 481 (6th Cir.1988)). The ALJ was not required to list the relative skill set in his decision. It follows that any error in the skill set listed by the ALJ does not result in a step five finding unsupported by substantial evidence under *Wilson*, the Code, and Social Security Regulations.

Furthermore, the VE's testimony is not inconsistent with SSR 82-41, which states in relevant part that a skill is "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level". SSR 82-41, 1982 WL 31389, at *2. For example, SSR 82-41 sets forth semiskilled skill positions ranging from a chauffeur and waiter at the lower, less skilled end of the spectrum to administrative clerk, which involves more readily transferable skills. *Id*., at *3. Certainly, interpersonal, verbal, and listening skills are skills which could be acquired through positions such as a bartender and are contemplated by SSR 82-41.

To conclude, Plaintiff's argument that "the VE had not identified acquired work skills", is not well-taken because the VE did identify the relevant skills, neither the regulations nor the Code impose a duty on the ALJ to enumerate any skills, and the VE's testimony does not contradict SSR 82-41. Therefore, the ALJ's step five determination should be affirmed.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI benefits applied the correct legal standards and is supported by substantial evidence. Therefore, the undersigned recommends the Commissioner's decision be affirmed.

                                        s/James R. Knepp II
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).